UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

Lee Em Bruce, Ronneka Smith, and Willie Brown,

        Plaintiffs,

  v.

The Board of Supervisors of the Louisiana Community and Technical Colleges; and
Dr. Monty Sullivan, in his official capacity as the System President,

        Defendants.

---

**CIVIL ACTION**

**NO. 3:16-cv-00012-SDD-EWD**

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT

**BIZER & DEREUS**

Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

1. Plaintiffs Lee Em Bruce ("Mr. Bruce"), Ronneka Smith ("Ms. Smith"), and Willie Brown ("Mr. Brown") are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their most effective means of communication. Plaintiffs have been enrolled as students at Delgado Community College, but on numerous occasions they have been denied the auxiliary aids and services necessary to communicate with defendants' employees, staff, faculty, and professors in a manner that is equivalent to that provided to persons who are hearing.

2. Delgado Community College is a Louisiana public community college with campuses throughout the New Orleans metropolitan area managed and operated by the Board of Supervisors of the Louisiana Community and Technical Colleges (hereinafter "the Board"). Dr. Monty Sullivan is the System President of the Louisiana Community and Technical Colleges and is responsible for ensuring that the community colleges managed and operated by the Board comply with the law. Dr. Monty Sullivan is sued in his official capacity only under the doctrine of *Ex Parte Young*.

3. Defendants have repeatedly discriminated against Plaintiffs by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with Plaintiffs regarding complex educational matters. As a result, Plaintiffs were unable to meaningfully engage in the educational services provided at Delgado Community College. Due to the discrimination they have suffered, Plaintiffs have suffered loss of educational opportunities, segregation and isolation, and invasion of their civil rights. Plaintiffs seeks injunctive and declaratory relief; compensatory damages (including nominal damages); and attorneys' fees and costs to redress defendants' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.

4. Plaintiffs' primary purpose in bringing this lawsuit is to redress the unlawful

discrimination they have experienced at Delgado Community College, and to ensure that such discrimination does not happen again to them or other deaf individuals in the future. Therefore, Plaintiffs aver that even an award of nominal or minimal damages would be a vindication of their civil rights and would confer significant civil rights to the general public. A judgment against Defendants, regardless of amount, would likely deter Defendants from discriminating against deaf individuals in the future.

## THE PARTIES

5. Plaintiffs are deaf individuals who communicate primarily in American Sign Language. Plaintiffs are substantially limited in the major life activities of hearing and speaking, and are qualified people with disabilities within the meaning of the ADA and the Rehabilitation Act.

6. The Board of Supervisors of the Louisiana Community and Technical Colleges is an arm of the State of Louisiana and is the political entity responsible for managing and operating Delgado Community College.

7. Dr. Monty Sullivan is responsible for the functioning and control of all of the programs offered by the Board and is sued in his official capacity for declaratory and injunctive and attorneys' fees/costs pursuant to the ADA and the Rehabilitation Act pursuant to the doctrine of *Ex parte Young*.

8. As the operator, manager, and political entity responsible for the education services discussed below, the Board is obligated to comply with the requirements of the ADA and the Rehabilitation Act.

9. Defendants are obligated to comply with the requirements of the ADA.

## JURISDICTION & VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for plaintiff's claims arising under federal law.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District. Furthermore, the Board has its headquarters and/or principal place of business in East Baton Rouge Parish.

## STATEMENT OF FACTS

12. Plaintiffs are deaf and communicate primarily in American Sign Language (ASL).

13. Plaintiffs require auxiliary aids and services to communicate effectively in an educational setting. Specifically, in a classroom setting Plaintiffs require a sign language interpreter to keep up with the fast-paced conversation, exchange of information, and dialogue during their classes.

14. Plaintiffs also require auxiliary aids and services, such as closed captioning, in order to fully participate in online courses involving videos.

15. Plaintiffs cannot rely on "lip reading" as a means of effective communication because of the limited reliability of this form of communication, the distance between speakers in a classroom, and the regular movement of individuals in a classroom (*i.e.* if a professor is facing the computer screen).

16. Mr. Bruce took classes at Delgado until January of 2017 without difficulty obtaining a sign language interpreter for his class until January of 2017, when sign language interpreters were no longer provided.

17. Throughout his time at Delgado, however, Mr. Bruce had difficulty understanding the terms, conditions, and requirements of financial aid. Navigating the requirements to obtain financial aid is commonly known to be a difficult and confusing process.

18. Despite the confusing nature of the financial aid process, a sign language interpreter was never made available to Mr. Bruce to help him ask questions of the individuals at the financial aid office.

19. Mr. Bruce, on multiple occasions, requested a sign language interpreter to aid him with

understanding the financial aid process.

20. Without the aid of a sign language interpreter, Mr. Bruce had difficulty understanding the terms, conditions, and requirements of financial aid.

21. In January of 2017, Mr. Bruce registered for three courses: (1) digital circuits, (2) internal communication, and (3) electrical engineering. In March, he withdrew from internal communication and electrical engineering, but kept digital circuits.

22. In approximately March of 2017, the interpreters for his digital circuits course stopped coming to class. Mr. Bruce complained to Gretchen Peoples at Delgado, but she did not ensure that the interpreters would come to class.

23. In April of 2017, Mr. Bruce received an interpreter on only one occasion.

24. Despite not getting sufficient accommodations and interpreters, Mr. Bruce never missed a class and attempted to communicate via passing handwritten notes.

25. Because Mr. Bruce dropped several classes, he lost his financial aid. With financial aid, Mr. Bruce does not have to pay for his courses. Without aid, Mr. Bruce has to pay $3,000.00 for tuition.

26. Upon information and belief, Mr. Bruce would have never dropped his courses had he known that dropping courses would have ended his financial aid. But he did not know this because he did not receive interpreters to communicate with the financial aid staff.

27. Due to the lack of sufficient accommodations, Mr. Bruce has suffered embarrassment, distress, anxiety, isolation, and invasion of his civil rights. Mr. Bruce also intends to prove at trial that his loss of financial aid was caused by the lack of sufficient accommodations.

28. In January of 2017, Plaintiff Ronneka Smith enrolled in five courses at Delgado's City Park campus. These courses were: (1) computer animation, (2) web design, (3) digital press and printing, (4) portfolio development, and (5) advertising design.

29. For her computer animation and web design courses, Ms. Smith received adequate accommodations and was able to effective communicate with her teachers and other class members.

30. However, Ms. Smith did not receive adequate sign language interpreters for her digital press and printing course, her portfolio course, and her advertising design course.

31. For approximately 90% of the classes, Ms. Smith was not able to participate due to the lack of sign language interpreters. Instead, Ms. Smith sat in class, trying her best to understand what was going on, unable to ask any questions of the professors or participate in group discussions.

32. Ms. Smith attempted to confer with Gretchen Peoples at Delgado, but Ms. Peoples did not ensure that interpreters were available for the classes.

33. Due to the lack of sufficient accommodations, Ms. Smith has suffered embarrassment, distress, anxiety, isolation, and invasion of her civil rights. Ms. Smith also intends to prove at trial that the lack of sufficient accommodations has caused her grades to suffer.

34. Mr. Brown has enrolled in classes at Delgado on and off since 2014. Mr. Brown is presently enrolled as an online student at Delgado.

35. Throughout his time as a student at Delgado, Mr. Brown has been repeatedly denied a sign language interpreter and other auxiliary aids necessary to afford effective communication with regards to his education and financial aid.

36. For example, in the summer semester of 2017, Mr. Brown was enrolled in an online course offered by Delgado, upon information and belief entitled "Interpersonal Communications." Approximately halfway through the course, Mr. Brown received an email about an assignment to conduct an interview with a foreign student. Due to his disability, Mr. Brown needed a sign language interpreter to interview a foreign student.

37. Mr. Brown contacted Delgado's disability services to arrange for an interpreter. Mr.

Brown was told that they would "do their best," but no interpreter or other auxiliary aid was ever provided to Mr. Brown to facilitate interview with a foreign student. Accordingly, Mr. Brown was unable to complete the assignment and failed the course.

38. In the spring semester of 2018, Mr. Brown was enrolled in an online Biology 101 course offered by Delgado. As part of this course, Mr. Brown was required to watch certain online videos. Upon information and belief, some of the videos did not contain closed captioning/subtitles. Alternatively, upon information and belief, the close-captions/subtitles on the videos were not working properly due to technical issues with Delgado's website. Mr. Brown ultimately dropped the course.

39. Due to a lack of sign language interpreters and other auxiliary aids, Mr. Brown's grades and educational success suffered.

40. Due to a lack of sign language interpreters and other auxiliary aids, Mr. Brown also had difficulty communicating with Delgado staff about his financial aid and student loans.

41. Due to the lack of sufficient accommodations, Mr. Brown has also suffered embarrassment, distress, anxiety, isolation, and invasion of his civil rights.

42. Upon information and belief, due to the lack of sufficient accommodations, Plaintiffs were not afforded an equal opportunity to engage in the services offered by defendants.

43. Upon information and belief, Plaintiffs were not afforded an equal opportunity to learn and participate in their courses in the same manner as individuals who are hearing.

44. Upon information and belief, Plaintiffs were not afforded an equal opportunity to obtain the individual assistance that defendants staff, professors, and employees are able to provide, such as assistance with course information, financial aid, and other assistance.

45. Upon information and belief, defendants were aware of Plaintiffs' obvious disability.

46. Upon information and belief, defendants staff failed to undertake any meaningful

assessment of Plaintiffs' communication needs and abilities.

47. Upon information and belief, as a result of defendants' failure to ensure effective communication with Plaintiffs, they received services that were objectively substandard and that were inferior to those provided to individuals who are hearing.

48. Mr. Brown is presently enrolled in Delgado's Spring, 2018 semester. Mr. Bruce intends on enrolling in courses at Delgado again in the near or immediate future. Ms. Smith may wish to enroll in courses at Delgado in the future.

49. Plaintiffs have an "actual or imminent" date that the harm will resume. Specifically, Plaintiffs anticipate that the harm will resume as soon as they enroll in more classes at Delgado.

50. Further, Plaintiffs' harm is "actual" and is not abstract. Plaintiffs have suffered this exact harm (defendants' failure to accommodate) in the past and reasonably anticipate that they will suffer the harm again.

51. Defendants intentionally discriminated against Plaintiffs in that their actions were "purposeful"; additionally, defendants intentionally discriminated against Plaintiffs with deliberate indifference to their rights and to Plaintiffs' communication needs; defendants' discrimination has caused plaintiffs invasion of their civil rights and fear, anxiety, isolation, and emotional distress.

**CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

52. PLAINTIFFS repeat and reallege all preceding paragraphs in support of this claim.

53. At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, et seq. has been in full force and effect and has applied to DEFENDANTS' conduct.

54. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to DEFENDANTS' conduct.

55. At all times relevant to this action, PLAINTIFFS have been substantially limited in the major life activities of hearing and speaking, and are an individuals with disabilities within the meaning of the ADA, 42 U.S.C. § 12102(2).

56. THE STATE OF LOUISIANA is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

57. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

58. Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

59. Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

60. Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

61. Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

62. DEFENDANTS discriminated against PLAINTIFFS, on the basis of their disability, in violation of Title II of the ADA and its implementing regulations.

63. PLAINTIFFS are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs (including expert expenses), and compensatory and nominal damages pursuant to Title II of the ADA.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

64. PLAINTIFFS repeat and reallege all preceding paragraphs in support of this claim.

65. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

66. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

67. At all times relevant to this action, PLAINTIFFS have had substantial limitations to their major life activities of hearing, speaking, and seeing and have been individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

68. At all times relevant to this action, DEFENDANTS have been offering programs, services, activities, or accommodations receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

69. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

70. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

71. DEFENDANTS discriminated against PLAINTIFFS, on the basis of disability, in violation of 29 U.S.C. § 794.

72. PLAINTIFFS are therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss they sustained as a result of DEFENDANTS' discriminatory conduct as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

73. PLAINTIFFS are further entitled to injunctive relief, as well as an award of attorneys' fees, and costs (including expert expenses) pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** PLAINTIFFS respectfully pray that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that DEFENDANTS' policies, procedures, and practices have subjected PLAINTIFFS to unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

b. Issue an injunction forbidding DEFENDANTS from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of DEFENDANTS' facilities, services or programs;

c. Issue an injunction ordering DEFENDANTS:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against PLAINTIFFS or other deaf or hard of hearing individuals and their companions by failing to provide effective communication;

   ii. to develop, implement, promulgate, and comply with a policy requiring that a qualified, in-person ASL interpreter be provided to all deaf or hard of hearing individuals for effective communication in all services offered by DEFENDANTS;

   iii. to develop, implement, promulgate, and comply with a policy requiring that functioning closed captioning/subtitles be provided on all videos made part of instructional courses offered by DEFENDANTS;

   iv. to develop and implement a new system, or integrate into a currently existing system a means of identifying students as Deaf, Deaf Blind, Deaf Disabled, Hard of Hearing, and other persons with other disabilities;

   v. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

   vi. to train all its employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and the RA;

d. Award to PLAINTIFFS:

   i. Compensatory damages (including nominal damages) from the STATE OF LOUISIANA pursuant to the ADA and the RA;

   ii. Reasonable costs (expert expenses) and attorneys' fees pursuant to the ADA and the RA;

   iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

   iv. Any and all other relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for the issues of (1) the injuries they suffered as a result of defendants' discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: April 30, 2018

                        Respectfully Submitted,

                        **BIZER & DEREUS**
                        Attorneys for Plaintiff
                        Andrew D. Bizer (LA # 30396)
                        andrew@bizerlaw.com
                        Garret S. DeReus (LA # 35105)
                        gdereus@bizerlaw.com
                        Marc P. Florman (LA # 35128)
                        Mflorman@bizerlaw.com
                        3319 St. Claude Ave.
                        New Orleans, LA 70117
                        T: 504-619-9999; F: 504-948-9996

By: /s/ Marc P. Florman
       Marc P. Florman