# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LEE EM BRUCE, RONNEKA SMITH AND WILLIE BROWN | CIVIL ACTION NO. |
| VERSUS | 3:18-cv-00012-SDD-EWD |
| BOARD OF SUPERVISORS OF THE LOUISIANA COMMUNITY AND TECHNICAL COLLEGES AND DR. MONTY SULLIVAN, IN HIS OFFICIAL CAPACITY AS SYSTEM PRESIDENT | |

## RULING

This matter is before the Court on the *Motion to Transfer Venue*[1] by Defendants, The Board of Supervisors of the Louisiana Community and Technical Colleges ("LCTCS") and Dr. Monty Sullivan, in his official capacity as System President ("Sullivan")(or collectively "Defendants"). Plaintiffs Lee Em Bruce, Ronneka Smith, and Willie Brown ("Plaintiffs") have filed an *Opposition*[2] to this motion. For the following reasons, the Court finds that Defendants' motion should be granted.

## I. BACKGROUND

Plaintiffs are students who have previously been or are currently enrolled at Delgado Community College ("Delgado"),[3] an institution within the LCTCS, with four campuses located in New Orleans, Louisiana and one campus located in Metairie, Louisiana.[4] Plaintiffs are deaf individuals who communicate primarily in American Sign

---

[1] Rec.Doc. No. 23.
[2] Rec. Doc. No. 27.
[3] Rec. Doc. Nos. 1 & 22.
[4] Rec. Doc. No. 23-2.

Document Number: 48933

Language ("ASL"),⁵ and they allege generally that Defendants have repeatedly discriminated against them by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with Defendants' employees, staff, faculty, and professors in a manner equal to those services provided to hearing students.⁶ As a result of this alleged discrimination, Plaintiffs contend they have been and continue to be unable to meaningfully engage in the educational services provided by Delgado.

On October 25, 2017, Plaintiffs filed a lawsuit in the Eastern District of Louisiana against the same Defendants named herein which appears to be identical to the present lawsuit.⁷ However, on October 30, 2017, Plaintiffs filed a Notice of Voluntary Dismissal without Prejudice, which the Eastern District granted.⁸ Plaintiffs subsequently filed the instant litigation in the Middle District of Louisiana on January 5, 2018.⁹ Defendants now move to transfer venue to the Eastern District of Louisiana.

## II. LAW & ANALYSIS

### A. Motion To Transfer Venue

"Section 1404(a) of Title 28 allows the Court in its discretion to transfer venue to another district or division, '[f]or the convenience of parties and witnesses, in the interest of justice,' where the action might have been brought."¹⁰ "'When the movant demonstrates that the transferee venue is clearly more convenient' than the venue

---

⁵ Rec. Doc. No. 1, ¶ 1.
⁶ *Id.*
⁷ *See* Rec. Doc. No. 23-8, Civil Action No. 17-cv-11209-KDE-JCW.
⁸ Rec. Doc. No. 23-1 at 3 (citing Civil Action No. 17-cv-11209 (E.D. La.), Rec. Doc. No. 4).
⁹ Rec. Doc. No. 1.
¹⁰ *Norman v. H & E Equipment Services, Inc.*, 2015 WL 1281989, at *5 (M.D.La. Mar. 20, 2015)(quoting 28 U.S.C. § 1404(a); *Hollis v.. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir.2001)).

chosen by the plaintiff, 'it has shown good cause and the district court should grant the transfer.'"[11]

"In determining whether to transfer a case, the court must consider both private interest factors and public interest factors after first considering whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."[12] "These factors are 'not necessarily exhaustive or exclusive' and 'none can be said to be of dispositive weight.'"[13]

The private interest factors that a court must consider are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[14] The public factors to be considered are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[15] "The Fifth Circuit has explained that a plaintiff's choice of venue is not determinative in the analysis, but the plaintiff's choice of venue should be respected if the transferee venue is

---

[11] *Coleman v. Trican Well Service, L.P.*, 2015 WL 865153, at *1 (W.D.Tex. Feb. 27, 2015)(quoting *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir.2008)).
[12] *Saurage v. Rave Reviews Cinemas, LLC*, 2008 WL 205342, at *2 (M.D.La. Jan. 23, 2008)(citing *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004)).
[13] *Vivint Louisiana, LLC v. City of Shreveport*, 2015 WL 1456216, at *3 (M.D.La. Mar. 23, 2015)(quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008)(citing *Action Indus., Inc., v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir.2004)).
[14] *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.
[15] *Id.*

not clearly more convenient."[16]

### B. Arguments of Parties

Defendants do not argue that the Middle District is an improper venue for this suit considering that Delgado is supervised under the LCTCS, and the LCTCS is domiciled in East Baton Rouge Parish within the Middle District. However, Defendants maintain the Eastern District is also a proper venue because Delgado has several campuses in New Orleans and Metairie, and all campuses are located within the Eastern District.

Defendants maintain that the private interest factors in this case weigh in favor of transfer. Defendants contend the Eastern District is the more convenient court because a substantial part of the events or omissions giving rise to the claims asserted in this matter occurred on Delgado's campuses. Defendants note that Plaintiffs' *Complaint* filed in the Eastern District contained allegations that venue was proper in the Eastern District "because a substantial part of the events that give rise to the claims occurred in this District."[17] Further, regarding the instant suit, Defendants argue that Plaintiffs' *First Amended Complaint* alleges no personal conduct by any member of the LCTCS, nor do they allege that any interaction with Delgado staff occurred in the Middle District. Notably, in both the Eastern District *Complaint* and the original *Complaint* filed in this Court, Plaintiffs Bruce and Smith alleged that they reside in the New Orleans area.[18] However, in Plaintiffs' *First Amended Complaint*, all allegations regarding Plaintiffs' residences have been removed.[19] Thus, because no Plaintiff indicates that he/she lives in the Middle

---

[16] *CSFB 1998–C2 TX Facilities, LLC v. Rector*, 2015 WL 1003045, at *6 (Mar. 5, 2015)(citing *Volkswagen II*, 545 F.3d at 314–15 (5th Cir.2008)(en banc)).
[17] Rec. Doc. No. 23-1 at 6 (quoting Rec. Doc. No. 23-8, ¶ 10).
[18] *See* Rec. Doc. Nos. 1 & 23-8.
[19] Rec. Doc. No. 22.

District, Defendants contend Plaintiffs' choice of forum should be afforded little deference in this case.

Defendants also challenge Plaintiffs' allegation in their *First Amended Complaint* that "[v]enue is proper in this district … because a substantial part of the events that give rise to the claims occurred in this district."[20] Defendants submit that Plaintiffs' allegations directly contradict this contention as both Bruce and Smith claim they took classes in person at Delgado, and Smith indicates that she was enrolled at Delgado's City Park Campus in New Orleans. Bruce and Smith further allege that they personally interacted with Gretchen Peoples and other staff members at Delgado's financial aid office, and, although Brown claims he participated in Delgado's online courses, he alleges he contacted Delgado's Office of Disability Services.[21] Defendants claim no presence in the Middle District as Delgado's physical classrooms,[22] Office of Financial Aid,[23] and Office of Disability Services[24] are all located in the New Orleans area. Additionally, Defendants contend the student records and documentary evidence of resources and accommodations provided to students attending Delgado are kept and maintained in New Orleans within the Office of Disability Services.[25]

Defendants also maintain that transferring venue to the Eastern District would mitigate against witness costs as Delgado's campuses are substantially closer to the Eastern District rather than the Middle District, and the key witnesses to this litigation work

---

[20] *Id.* at ¶ 11.
[21] *Id.* at ¶ 37.
[22] Rec. Doc. No. 23-2.
[23] Rec. Doc. No. 23-6.
[24] Rec. Doc. No. 23-5.
[25] Rec. Doc. No. 23-4.

Document Number: 48933

Page 5 of 15

and reside in the Eastern District, *i.e.*, Gretchen Peoples, Delgado's disability services coordinator;[26] Joseph Williams, who is alleged to have personally interacted with Plaintiff Smith;[27] and Dr. Arnel Cosey, the Vice Chancellor of Student Affairs and Executive Dean of Delgado's City Park Campus.[28] Further, although Defendants admit that not every potential or possible witness has been identified at this stage of the litigation, Defendants contend that it is reasonably likely that most witnesses with key knowledge as to the facts surrounding this case will work and/or reside in the Eastern District. As such, Defendants submit that trial of this matter would be more expeditious and less expensive if tried in the Eastern District. In the event of a multi-day trial in the Middle District, greater meal and lodging costs would almost certainly be necessary. Finally, the subpoena power is equal as to both districts and is neutral.

As to the public interest factors, Defendants argue that these factors also weigh in favor of transfer. Defendants note that, statistically, the Eastern District would likely resolve this litigation in a shorter median time as compared to the Middle District. Defendants offer evidence showing that the median time from filing to disposition in civil cases is 6.8 months in the Eastern District contrasted by 11.4 months in the Middle District, and an even shorter median time from filing to trial exists in the Eastern District – 17.9 months – as compared to the Middle District – 36 months.[29]

Additionally, Defendants claim that the localized interests in having this case

---

[26] Rec. Doc. No. 22, ¶¶ 22 & 32; Rec. Doc. Nos. 23-4 & 23-5.
[27] Rec. Doc. Nos. 23-3 & 23-5.
[28] Rec. Doc. No. 23-2.
[29] Rec. Doc. No. 23-9, *U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (December 31, 2017), available at
http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2017.pdf

decided in the Eastern District weigh in favor of transfer as any decision will directly affect Delgado particularly more than the LCTCS generally.  Defendants argue that Delgado creates and implements its own policies in accordance with the general rules of the LCTCS, and if Plaintiffs prevail herein, the relief obtained will directly affect Delgado rather than the LCTC system.  As Delgado has no campuses within the Middle District, no relief will be felt in the Middle District.

Finally, Defendants contend the Middle and Eastern Districts are equally equipped to adjudicate the constitutional matter complained of, and there are no conflicts of law or application of foreign law present.  Accordingly, Defendants maintain they have demonstrated that transferring this case to the Eastern District is warranted and is in the best interests of justice.

Plaintiffs oppose the Defendants' motion, arguing that Section 1404(a) does not grant a defendant the power to substitute its preference of venue over that of a plaintiff's. Plaintiffs cite the Supreme Court's decision in *Gulf Oil Corp. v. Gilbert*, wherein the Court stated: "It is often said that the plaintiff may not, by choice of an inconvenient forum, vex, harass or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[30]  Plaintiffs contend there is nothing vexatious or harassing by suing Defendants in the district closest to Defendants' home office, where funding is allocated, centralized decisions are made, and where Defendants' counsel are located.[31]

---

[30] 330 U.S. 501, 508 (1947).
[31] Rec. Doc. No. 27 at 3.

Document Number: 48933

Page 7 of 15

Plaintiffs argue Defendants have not met their burden of demonstrating that the Eastern District is a more convenient forum that the Middle District. In weighing the private and public interest factors, Plaintiffs offer several reasons why this case should be tried in the Middle District rather than the Eastern District. Regarding sources of proof, costs to witnesses, and other practical problems, Plaintiffs contend Defendants have failed to carry their burden of demonstrating that these factors clearly favor transfer.

Plaintiffs submit that the issues raised in this case involve system-wide contracts with disability service care providers and the allocation of funding to the various colleges within the LCTCS system; thus, Plaintiffs maintain that any effort to resolve their claims of systematic deficiencies, and Defendants' failure to accommodate students with disabilities, will likely involve evidence and witnesses located in Baton Rouge where the offices of both the LCTCS and Dr. Sullivan are located. Plaintiffs acknowledge that substantial evidence pertinent to the instant litigation may be located in the Eastern District; however, Plaintiffs argue that Defendants and their lawyers are domiciled in the Middle District, and several witnesses and potential evidence are likely to be located in the Middle District.

Plaintiffs counter that Defendants' claims that they will experience inconvenience, prejudice, or financial hardship if this case is tried in the Middle District are speculative and meritless as the Middle District is less than eighty (80) miles away from Delgado's main campus. Plaintiffs also note that Defendants admitted that none of their witnesses are located outside of the 100-mile threshold for considering witness costs and

inconvenience as required by the Fifth Circuit.[32]  Thus, Plaintiffs argue Defendants' preference in trying this case in the Eastern District does not constitute "clear proof" in favor of transfer.[33]

As to the public interest factors, Plaintiffs note Defendants' concession that familiarity with the law and avoidance of conflicts of law are neutral.  Plaintiffs claim that Defendants' arguments regarding administrative difficulties and localized interests are speculative and fail to meet Defendants' burden.  Plaintiffs argue Defendants' statistical data "ignores significant changes that have occurred in both the Eastern and Middle Districts in 2018,"[34] making specific reference to the Honorable Eastern District Court Judge Kurt Engelhardt's ascension to the Fifth Circuit.  Further, Plaintiffs cite this Court's previous finding in *Utility Constructors, Inc. v. Liberty Mutual Insurance Co.* that the time between filing suit and trial is not entitled to much weight because it is the most speculative.[35]  Plaintiffs also claim that this Court has already "invested significant time and resources in becoming familiar with the facts and law of this case."[36]

Plaintiffs attempt to refute the localized interest arguments presented by Defendants, arguing that Defendants ignore the systemic nature of the alleged discrimination and the purported "Baton-Rouge-centric nature of Defendants' own affirmative defenses" such as sovereign immunity, qualified immunity, and fundamental

---

[32] *Id.* Plaintiffs cite to *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).
[33] *Id.* at 5.
[34] *Id.* at 6.
[35] No. 15-cv-00501-JWD-RLB, 2016 WL 4033977 at *8 (M.D. La. July 25, 2016).  The Court notes that this case was decided before the Great Flood of 2016 and the death of the Honorable James Brady in 2017.
[36] Rec. Doc. No. 27 at 6 (citing Rec. Doc. No. 21).

Document Number: 48933
Page 9 of 15

alteration/undue burden.[37] Plaintiffs also argue that Baton Rouge taxpayers have at least as much interest in the outcome of this litigation, if not more, than New Orleans taxpayers.

**C. Analysis**

1. <u>Suit Could Have Been Filed in Eastern District of Louisiana</u>

Pursuant to the Section 1404(a) framework, the Court must first determine whether this lawsuit could have been brought in the Eastern District. Thus, the general venue statute, 28 U.S.C. § 1391, applies, which establishes venue in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ...; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[38]

As this case appears to have been previously filed in the Eastern District of Louisiana, and no party disputes that this suit could have been filed in the Eastern District of Louisiana, the Court finds that this action could have been brought in the Eastern District of Louisiana where venue would be proper.

2. <u>Plaintiffs' Choice of Forum</u>

The Court rejects Plaintiffs' argument that their choice of forum is entitled to deference in this case. This Court has previously held: "[I]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and

---

[37] Rec. Doc. No. 27 at 6.
[38] 28 U.S.C. § 1391(b)(West 2015).

Page 10 of 15

of itself it is neither conclusive nor determinative."[39] This Court has also held that, "[g]enerally, a plaintiff's choice of forum is given great deference; however, a plaintiff's choice of forum is given less deference **when the plaintiff is not a resident of his choice of forum and when the operative facts of a case occurred in a different forum**."[40] Despite Plaintiffs' removal of this allegation in their *First Amended Complaint*, the record establishes that the Plaintiffs reside in the Eastern District as alleged in the Eastern District *Complaint* and the original *Complaint* filed herein.

### 3. Private and Public Interest Factors

After consideration of the facts in the record and the applicable law, the Court finds that transfer of this case to the Eastern District furthers the convenience of the parties and is in the interests of justice. The facts of this case demonstrate that Plaintiffs are/were students at Delgado Community College for which all five campuses are located within the Eastern District. The overwhelming majority of witnesses and evidence appears to be located the Eastern District, particularly since it is clear that all alleged harm in this matter was suffered by residents of the Eastern District allegedly committed mostly by actors in the Eastern District. That fact that the LCTCS main office and Defendant Sullivan are located in the Middle District is underwhelming when compared to the fact

---

[39] *Parker v. PNK (Lake Charles) LLC*, No. , 2017 WL 5077704 at *2 (M.D. La. Oct. 12,2017)(quoting *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970)); *see also Humble Oil & Refining Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963) (the avoidance of dismissal through 1404(a) lessens the weight to be given to the plaintiff's choice of venue)).

[40] *Rivers v. Union Pac. R.R.*, No. 16-673, 2017 WL 379447, at *2 (M.D. La. Jan. 26, 2017)(emphasis added) (citing *Apparel Prod. Servs. Inc. v. Transportes De Carga Fema*, 546 F. Supp. 2d 451, 453 (S.D. Tex. 2008)); *see also In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (plaintiff's choice of forum is entitled to less deference when it is not the plaintiff's home forum) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)).

that the majority of parties and witnesses who reside and/or work in the Eastern District. Plaintiffs offer no argument or evidence to controvert Defendants' assertions that: (1) all of Plaintiffs' contacts with Defendants' employees occurred in the Eastern District; (2) no contact occurred with any Defendant in the Middle District; (3) the Office of Financial Aid and Office of Disability Services are located in New Orleans; and (4) the student records and documentary evidence associated with the majority of Plaintiffs' claims is maintained in the Office of Disability Services. There is no doubt in the Court's view that it is more convenient and cost-effective to have this case tried in the Eastern District.

Plaintiffs' arguments regarding administrative difficulties and localized interests in Baton Rouge are conclusory, incomplete, and suggest an inordinate interest on the part of Baton Rouge taxpayers in the outcome of this litigation. Plaintiffs discount Defendants' reliance on statistics as speculative and claim that Defendants' data "ignores significant changes that have occurred in both the Eastern and Middle Districts in 2018."[41] Plaintiffs, however, reference only the recent transition of Eastern District Judge Kurt Engelhardt to the Fifth Circuit Court of Appeals but fail to analyze the administrative difficulties flowing from docket congestion in the Middle District.[42] Considering this Court's heavily congested docket coupled with the fact that no operative facts relating to Plaintiffs' claims occurred in this district, the Court finds that this factor weighs heavily in favor of transfer.

---

[41] Rec. Doc. No. 27 at 6.
[42] In November 2017, the Middle District suffered the loss of Senior District Judge James Brady, who carried active civil and criminal dockets at the time of his death. Recent statistics revealed that the Middle District of Louisiana is the fourth busiest district in the country despite having only three active district judges, two magistrate judges, and no senior judges. The docket of the Middle District has been further impacted in the last year by the increase in civil case filings related to a catastrophic flood event in August of 2016. As a result of these recent events, the three active judges of the Middle District assumed the criminal and civil dockets of the late Honorable James Brady and contemporaneously gained an increase of approximately 900 flood related civil filings.

Document Number: 48933

Page 12 of 15

Plaintiffs' claim that defense counsel are located in the Middle District is meritless as a matter of law. This Court, following Fifth Circuit precedent, has held that the inconvenience of the location of counsel is not a factor to be considered.[43]

Plaintiffs also overstate this Court's investment in the current litigation. Plaintiffs state that this Court has already "invested significant time and resources in becoming familiar with the facts and law of this case;"[44] however, the very document Plaintiffs cite for this proposition also states: "This suit is still in its early stages. The Court has not yet held a scheduling conference, nor has the Court issued a Scheduling Order."[45] This argument is unpersuasive and does not weigh against transfer.

Finally, Plaintiffs maintain that Defendants' affirmative defenses of sovereign immunity, qualified immunity, and fundamental alteration/undue burden are "Baton-Rouge-centric,"[46] and Defendants are likely to offer evidence concerning statewide tax allocations, budgeting decisions, and comparison of services provided at various colleges within the LCTCS system; thus, Plaintiffs contend:

> These have all been hot-button topics in the Baton Rouge public consciousness for some time. Baton Rouge taxpayers have *at least* as much interest in hearing about (and remedying) systemic discrimination in the LCTCS system as New Orleans area taxpayers. If anything, the dispositive issues in this case may be of more local interest in the Middle District than in the Eastern District.[47]

The Court is unpersuaded that Defendants' affirmative defenses are "Baton-rouge-centric" simply because they are asserted by Defendants located in Baton Rouge. The

---

[43] *Parker*, 2017 WL 5077704 at *4 (citing *In re Horseshoe Entm't*, 337 F.3d at 434 ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue.")).
[44] Rec. Doc. No. 27 at 6 (citing Rec. Doc. No. 21).
[45] Rec. Doc. No. 21 at 6.
[46] *Id.*
[47] *Id.* at 7.

defenses of sovereign immunity, qualified immunity, and fundamental alteration/undue burden are not novel or specialized within the Middle District, and they certainly do not require resolution in the Middle District. Moreover, the suggestion that Middle District taxpayers may be more interested in the outcome of this litigation than Eastern District taxpayers is speculative, conclusory, and unsupported by evidence or jurisprudence.

The Court finds that Plaintiffs' conduct and arguments are highly suggestive of forum shopping. Plaintiffs originally filed this lawsuit in the Eastern District. Five days later, Plaintiffs voluntarily dismissed the suit filed in the Eastern District, and a little over two months later, Plaintiffs filed a seemingly identical suit in the Middle District. Plaintiffs' allegation in their *Complaint*[48] and *First Amended Complaint*[49] that "a substantial part of the events that give rise to the claims occurred in this District," is belied by nearly all of Plaintiffs' subsequent allegations. Now, to defeat Defendants' motion, Plaintiffs offer strained and unsupported arguments in an apparent attempt to overemphasize the purported localized interests of Middle District taxpayers over Eastern District taxpayers. The Court finds these arguments without merit, particularly considering that the outcome of this litigation with respect to Delgado will have a direct impact on residents of the Eastern District but **may** only result in an indirect impact on residents of the Middle District.

The Eastern District held in *The Laitram Corporation v. Hewlett-Packard Company* that "[a] fundamental principle guiding the Court's analysis is that litigation should proceed in that place where the case finds its center of gravity."[50] The uncontroverted record in

---

[48] Rec. Doc. No. 1, ¶ 10.
[49] Rec. Doc. No. 22, ¶ 110.
[50] 120 F.Supp.2d 607, 609 (E.D. La. 2000)(internal quotation marks and citations omitted).

Document Number: 48933

Page 14 of 15

this case shows that the Eastern District of Louisiana is the "center of gravity" for the acts giving rise to this lawsuit. Accordingly, the Court finds that Defendants have carried their burden of demonstrating that the Eastern District is clearly a more convenient and proper forum for this case.

## III.  CONCLUSION

For the reasons set forth above, Defendants' *Motion to Transfer Venue*[51] is GRANTED, and this case shall be TRANSFERRED to the United States District Court for the Eastern District of Louisiana.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 19th day of November, 2018.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[51] Rec.Doc. No. 23.

Document Number: 48933

Page 15 of 15